597 F.2d 886
 MASON DRUG COMPANY, INC., Plaintiff-Appellant,
v.
Patricia R. HARRIS, Secretary of the United States
Department of Housing and Urban Development and
Hartford Fire Insurance Co., Defendants-Appellees.
 No. 76-4339.
 United States Court of Appeals,
Fifth Circuit.
 June 25, 1979.
 
 James E. Hart, Jr., Brewton, Ala., for plaintiff-appellant.
 J. Hodge Alves, III, Mobile, Ala., Robert Kopp, Marta W. Berkley, Dept. of Justice, Civ. Div., Appellate Section, Washington, D. C., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before TJOFLAT, HILL, Circuit Judges, and HIGGINBOTHAM,* District Judge.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 In this case we are concerned with an action to recover on a policy of flood insurance issued pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4127. Plaintiff Mason Drug Company appeals from a summary judgment and a final dismissal on the merits, with prejudice, in favor of defendant-appellee National Flood Insurers Association (NFIA).[1]
 
 
 2
 The material facts relative to this case are undisputed. On April 10, 1975, it had been raining for several days in Brewton, Alabama, and flooding was considered a possibility. At approximately 9:00 a. m. on April 10, an agent of the Brewton Insurance Agency was having a cup of coffee with Mason Drug's president, Mr. Sibert, in the store. Sibert asked about the price of flood insurance, since his store had flooded previously. The agent advised Sibert that he would have to check on the matter and would contact Sibert when he had done so.
 
 
 3
 Thirty minutes to an hour later, the agent advised Sibert what the premium would be, brought an application to Sibert and had him sign it, and collected the first premium payment. The application stated, under the heading "Important Notices," that the policy would "not cover loss resulting from a flood or mudslide occurrence already in progress on the date of this application." The application further stated that the policy would provide coverage for a one year period from April 10, 1975, to April 10, 1976. At the bottom of the form, the application stated, "Agent Certifies that following matters have been discussed with insured: (i) that loss already in progress on date of application is not covered." Sibert was assured by his agent that the policy was effective as of 12:01 on the morning of April 10, there being no waiting period for the policy to go into effect.
 
 
 4
 By midday on April 10, flooding in downtown Brewton was recognized as a significant possibility. At approximately 2:00 p. m., Sibert began caulking in the store and moving the merchandise to more protected areas. At about 4:00 p. m., Sibert was advised that there would be a flood. By late afternoon, Sibert saw that water had reached within twenty-five yards of the premises and continued to approach the store. Water entered the store at approximately 9:00 p. m. on April 10, and remained there until about 2:00 o'clock of the following afternoon.
 
 
 5
 NFIA refused to pay for the loss suffered by Mason Drug because the policy expressly excluded loss resulting from a flood which entered the insured's premises on the date of the application for insurance. This action followed, and Mason Drug appeals from the District Court's disposition of the case via summary judgment in the appellee's favor, claiming that there are factual issues as to whether there was a loss in progress at the time the policy was applied for and whether the requirement concerning coverage of a loss in progress on the date of the application was waived.
 
 
 6
 Where, as here, the language of a contract pertinent to a dispute is unambiguous, the determination of the legal operation of that language is a function for the court and not the jury. West v. Harris, 573 F.2d 873, 877 (5th Cir. 1978), Cert. denied, --- U.S. ----, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979); Nat Harrison Associates, Inc. v. Gulf States Utilities Co., 491 F.2d 578, 584 (5th Cir. 1974); Gore v. American Motorists Ins. Co., 441 F.2d 10, 11-12 (5th Cir.), Cert. denied, 404 U.S. 913, 92 S.Ct. 233, 30 L.Ed.2d 187 (1971). Since this case is before us under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4127, our conclusion regarding the legal operation of the exclusionary language involved here is controlled by the application of federal law. West v. Harris, 573 F.2d at 881.
 
 
 7
 Two recent decisions in this circuit have recognized that the "loss-in-progress" principle, by virtue of its recognition in standard insurance law, is applicable to policies issued under the national flood insurance program. Summers v. Harris, 573 F.2d 869 (5th Cir. 1978); Drewett v. Aetna Casualty & Surety Co., 539 F.2d 496 (5th Cir. 1976). The insurer in this case took extra precaution and included the "loss-in-progress" principle as an exclusionary clause in the application for insurance. The contract for insurance thus clearly excluded from coverage loss resulting from a flood already in progress on the Date of the application. The appellant's claim that the loss must be in progress at the Time the policy was applied for in order for the exclusionary language to apply is contrary to the plain terms of the contract and without merit. That the flood was in progress on April 10, 1975, the date of application, is undisputed. Indeed, the store was flooded on that date. There is also no dispute that the policy was in effect on April 10, 1975. That being the case, all of the provisions of the policy were effective on that date, including the portion which specifically excluded coverage of loss in progress on April 10, the date of application. The loss incurred as a result of the April 10 flood is thus outside the bounds of coverage afforded by the policy.
 
 
 8
 Mason Drug contends that the policy's exclusion of loss-in-progress was waived by the agent's representation to Sibert that a loss occurring on April 10, 1975, would be covered. Under the law in this circuit, the doctrine of waiver cannot be applied to provide coverage where coverage does not exist under, or is excluded by, the policy contract. Kaminer v. Franklin Life Ins. Co., 472 F.2d 1073, 1076-77 (5th Cir.), Cert. denied, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973); Reisman v. New Hampshire Fire Ins. Co., 312 F.2d 17, 20 (5th Cir. 1963); Reliance Ins. Co. v. The Escapade, 280 F.2d 482, 487 (5th Cir. 1960); C. E. Carnes & Co., Inc. v. Employer's Liability Assurance Corp., 101 F.2d 739, 742 (5th Cir. 1939). The appellant's waiver argument is therefore inapposite, since application of the doctrine of waiver in this case would result in coverage of loss expressly excluded by the policy.[2]
 
 
 9
 The exclusionary provision being clearly set forth in the policy and the doctrine of waiver being inapplicable on these facts, it is immaterial that Sibert claims to have been orally assured that loss occurring on the date of application would be covered under the policy. The District Court was correct in granting summary judgment in the appellee's favor, and the final dismissal of the case on the merits, with prejudice, in the appellee's favor is therefore affirmed.
 
 
 10
 AFFIRMED.
 
 
 11
 PATRICK E. HIGGINBOTHAM, District Judge, dissenting:
 
 
 12
 I respectfully dissent. There was in my view no flood or loss "already in progress" on the date of the application for flood insurance. The flood, by any definition, occurred on the day of the application.[1] There are three possible constructions of the hopelessly ambiguous language of the policy. First, and chosen by the majority, is the construction that leaves the applicant uninsured for the day of the application although the flood occurs after the contract of insurance is entered into. Under this construction of the policy, the risk of a flood occurring after the application is accepted and before the following midnight is upon the insured. The second possible construction of the exclusionary provision is that coverage was excluded for losses in progress at the time the policy was applied for or accepted. This is the construction urged by the appellant. Its adoption would place upon the insurer the risk of loss for flood occurring on April 10, but after the time of the application. Under this construction the clause would in effect restate the loss-in-progress doctrine of insurance law, see note 2 Infra. The third possible construction of the exclusionary language is that a flood occurring On the day of the application but after that day began at midnight was not "already" in progress on the date of the application. This construction places the risk of loss from a flood occurring anytime during April 10, 1975 upon the insurer who accepted the premium.
 
 
 13
 It could be argued that this third construction would work unfairness upon the insurance company by allowing an applicant to purchase flood insurance coverage as the water lapped at his door so long as the flood did not begin before midnight of the previous day. The answer to the argument is that the insurer can avoid such a possibility by either unambiguously providing in the policy that coverage is excluded for a flood that occurs at any time during the day the policy goes into effect or by relying upon the loss in progress doctrine. Of course the loss-in-progress principle would exclude coverage only for losses in progress at the time of the acceptance of the policy.[2]
 
 
 14
 The majority, finding that the language of the contract unambiguously excluded coverage, observes that:
 
 
 15
 . . . the insurer in this case took extra precaution and included the "loss-in-progress" principle as an exclusionary clause in the application for insurance . . ..
 
 
 16
 The insurer was, it seems, attempting to do more. It was apparently attempting to except the risk of a flood in progress, not merely at the time the policy was accepted, but for the entire day. If an insurer wishes to enjoy the benefits of insurance sales prompted by rising water and rising fear but does not wish to bear the risk of flood On the entire day of application, it can plainly so provide by deleting the word "already" from its contract of insurance, or by otherwise unambiguously excluding coverage for the entire day upon which application for insurance is made.
 
 
 17
 The majority concludes that the policy here did unambiguously exclude coverage for floods occurring at any time on the day of the application. I find the exclusionary provision of the policy ambiguous, and I would reverse the summary judgment entered in the appellee's favor and remand for a trial of any fact question as to the agreement of the parties, or failing evidence, resolve the ambiguity against the insurer responsible for the language.
 
 
 
 *
 District Judge of the Northern District of Texas, sitting by designation
 
 
 [1]
 Subsequent to the District Court's dismissal of this case, Patricia Roberts Harris, Secretary of the Department of Housing and Urban Development (HUD), was substituted as party-appellee in the place of the NFIA. The Department of HUD assumed the operation of all of the insurance aspects of the flood insurance program previously performed by the NFIA on January 1, 1978. In conjunction with this undertaking, HUD agreed to assume the defense of pending claims asserted pursuant to policies previously issued by the NFIA. This change in parties has no effect on the rights of these plaintiffs under the policies issued to them. Summers v. Harris, 573 F.2d 869, 870 n.1 (5th Cir. 1978); West v. Harris, 573 F.2d 873, 875 n.1 (5th Cir. 1978)
 
 
 [2]
 The appellee admits that the policy went into effect on April 10, 1975. It also admits that its agent assured Sibert on that date that the policy was then in effect. A logical explanation for these inquiries and assurances is that Sibert and the agent wanted to be sure that the normal fifteen-day waiting period between the date of application and the date a policy is issued had been waived. The NFIA could make insurance available with an immediate effective date where the community had become initially eligible within the preceding thirty days, and it did so in this case. See 24 C.F.R. § 1911.11 (1978). As we noted earlier, however, the policy became immediately effective In toto, and the "loss-in-progress on the date of application" exclusionary provision precluded coverage of the loss claimed by Mason Drug
 
 
 [1]
 One could argue that there is a fact question as to whether the flood was "in progress" when the river first rose above normal levels or at progressive points thereafter. It is undisputed there was no flood in progress the day preceding the application. Accordingly, there was also then no "loss in progress." Drewett v. Aetna Casualty & Surety Co., 539 F.2d 496 (5th Cir. 1976); Summers v. Harris, 573 F.2d 869 (5th Cir. 1978)
 
 
 [2]
 It is established in this circuit that the "loss-in-progress" doctrine of insurance law is applicable to policies issued under the national flood insurance program. Arguably the insurer here ought to enjoy the benefit of the doctrine despite the fact that express provision is made in the insurance contract for losses in progress. Even under that view, however, there appears to be a fact question as to whether the flood was in progress at the time the insurer accepted the policy on April 10, 1975. The existence of such a fact question would, of course, preclude entry of summary judgment in favor of the insurer