2GONZALES, Judge.
The trial court’s judgment in favor of defendant indicates a rejection of plaintiffs claim that he did not receive notice of the exclusions in the flood insurance policy. Further, in its written reasons for judgment, the trial court indicated that the plaintiff failed to produce sufficient credible evidence to support his claims against defendant. This determination was largely based on the trial court’s assessment of the credibility of the parties and witnesses involved. When factual findings are based on the credibility of witnesses, the factfinder’s decision to credit or discredit a witness’s testimony must be given great deference by the appellate court. Rosell v. ESCO, 549 So.2d 840, 845 (La.1989).
After a thorough review and evaluation of the record, we are convinced that the evidence supports the facts found and reasons assigned by the trial judge. We adopt the trial court’s reasons for judgment as our own. The judgment of the trial court in favor of defendant is affirmed at appellant’s costs.
AFFIRMED.
123rd Judicial District Court for the Parish of Assumption
State of Louisiana
Docket No: 21,033
Division “A”
Edgar Alleman, Jr. versus American Bankers Insurance Company
Filed JAN 13 1993
/s/ Darlene Landry
DEPUTY CLERK

REASONS FOR JUDGMENT

This case arises from a claim by plaintiff, Mr. Edgar Alleman, Jr., for damages he allegedly suffered as a result of a flood on or about May 8, 1991. On February 14, 1992, plaintiff filed suit against American Bankers Insurance Company, who had issued a standard flood insurance policy under the National Flood Insurance Program (NFIA) to Mr. Alleman, seeking recovery for his alleged losses. In addition to the flood damages, plaintiff demanded statutory penalties and attorneys’ fees under La.R.S. 22:658 and 22:1220, claiming American Bankers was arbitrary and capricious in refusing to tender the full amounts of its policy limits. For the reasons set forth herein, all of plaintiffs claims are denied, and judgment is rendered in favor of American Bankers Insurance Company, dismissing plaintiffs claims against American Bankers, and assessing plaintiff with the costs of the proceedings.
In February of 1991, plaintiff applied for and was provided flood insurance by American Bankers Insurance Company pursuant to the NFIA, in the amounts of $30,000.00 building loss and $8,000.00 contents loss.
On or about May 8, 1991, plaintiffs home was inundated by flood waters, causing damage to both the insured building and its contents. This flood followed closely on the heels of another loss, resulting from a flood some two weeks previous on April 26, 1991. As a result of the April flood claim, plaintiff was paid $1,555.00 for contents loss, and $11,343.83 for building loss. Plaintiff claimed, however, additional losses as a result of the May 8, 1991 flood, amounting to another $38,000, or the policy limits for the May flood claim. Plaintiff was paid $8,000 for the |2contents damage, which payment was accepted, and was tendered payment of approximately $12,805, representing his damage to the building from the May flood, less duplication of damages from the April flood, and less his claim for slab damage not covered under the policy. American Bankers rejected the claim for the full amount, tendered the lesser amount, suit was filed, and a trial date of November 16, 1992 was set.
*297 As a starting point, the policy in force between Edgar Alleman, Jr. and American Bankers was-issued pursuant to a federal program to provide affordable flood insurance on a nationwide basis to those who might normally find such coverage difficult to obtain. 42 U.S.C. Section 4001(d)(1) (1988). The terms and conditions of the insurance contract are contained in the “Standard” policy form issued to each insured, and also appear in the Code of Federal Regulations. 44 C.F.R. Part 61 App. A(l). The policy itself states that it is governed by FEMA, 42 U.S.C. 4001, et seq., and federal common law. (American Bankers Policy, Exhibit 1, Article X). Therefore, federal law and jurisprudence govern the interpretation of claims involving policies issued pursuant to the NFIA.
As part of this claim, plaintiff asked for statutory penalties and attorneys’ fees under Louisiana law, and raised a claim for detrimental reliance based upon the alleged conduct and promises of an independent insurance adjuster contracted to assist with the flood claim of May 8, 1991. Because these claims are controlled by federal law and jurisprudence, these claims fail as a matter of law. Even a prevailing plaintiff in a suit on a flood insurance policy issued pursuant to the NFIA is not entitled to recover the statutory penalty and attorneys’ fees allowed by state insurance law for arbitrary denial of coverage. West v. Harris, 573 F.2d 873 (5th Cir.1978); Bull’s Corner Restaurant v. Director of FEMA 759 F.2d 500 (5th Cir.1985). Additionally, the exclusions and obligations contained in the policy cannot be altered, modified or extended by the representations of an insurance agent, adjuster, or other third party (Policy, Exhibit 1, Article VIII(D); 44 C.F.R^jsPart 61 App. A(l)., and therefore plaintiffs claims of detrimental reliance are dismissed as a matter of law. Mason Drug Co., Inc. v. Harris, 597 F.2d 886 (5th Cir.1979); Gement v. Allstate Insurance Co., 516 F.Supp. 11 (E.D.La.1981).
Even where federal law not applicable, defendant’s refusal to pay its policy limits in addition to the amounts previously tendered was entirely reasonable and justifiable under the circumstances of the cases. Substantial questions surrounded plaintiffs claim, regarding both the coverage of slab damage allegedly caused by the flood, and the duplication of damages from the previous flood. Because of these reasonable defenses, as well as plaintiffs failure to prove its case, as discussed infra., statutory penalties and attorneys’ fees would be inapplicable even where federal law not to be applied.
With regard to the claim of detrimental reliance, plaintiff failed to produce any proof that he relied upon the alleged promises of the insurance adjuster, and in fact the testimony at trial showed otherwise. Plaintiff contended that the adjuster who handled the May 8 loss promised on or about July 18, 1991 full payment of policy limits unless American Bankers responded otherwise within two weeks. The alleged length of this waiting period was, however, subject to inconsistent and differing testimony by plaintiff and his wife. Moreover, the credible testimony of adjuster Dan Boyd disputed that any such promise had been made. Regardless, testimony was adduced at trial showing that even were such promises made, repairs were begun before the waiting period expired. Additionally, introduced into evidence was an August 1,1991 letter specifically questioning the loss and specifically raising the slab and duplication issues, and which was sent from American Bankers to Mr. Alleman less than two weeks after Mr. Boyd’s visit to adjust the loss. (Exhibit 8). Although plaintiff denied receiving this letter, he admitted cashing the $8,000.00 contents check enclosed in that letter. This is a disastrous blow to his credibility together with other inconsistencies in his testimony. Because plaintiff has failed to improve any promises or that he justifiably relied on any such promise, his claim for detrimental reliance is not substantiated.
Several other issues existed regarding the extent of the loss. It is axiomatic that plaintiff, in a civil suit, bears the burden of proving every facet of his claim against the defendant. In the case at hand, the plaintiff has simply failed to produce sufficient credible evidence to support his claims against American Bankers.
*298 With regards to the claim for slab damage, plaintiff submitted an estimate of $18,4.00 to the adjuster assigned to the Alleman loss for the settlement and cracking of the slab, and this amount was included in the preliminary-proof of loss signed by Mr. Alleman and the adjuster. Nevertheless, the evidence showed that Mr. Alleman spent less than $2,000 repairing the slab. Moreover, as the proof of loss (Exhibit 3) and the policy (Exhibit 1, Article VIII(I) specifically show, the proof of loss was in no way binding on American Bankers.
As to the merits of the claim for slab damage, it is held that plaintiff is not entitled to any recovery for slab damage. The policy specifically excludes coverage for damages caused by land sinkage, land subsidence, or destabilization or movement of land resulting from the accumulation of water in subsurface land areas. (Policy, Exhibit 1, Article 111(A)(1). Plaintiff presented no testimony whatsoever that the slab damage was caused by the flood. Moreover, the testimony and expert report of defendant’s expert, Dr. R. Richard Avent, P.E., was that the slab damage was most probably caused by soil settlement, or less likely by soil heaving. This testimony that the slab damage was caused by the movement of earth (either settlement or heaving) from subsurface water accumulation was convincing, and was unrebutted by plaintiff. Because the policy excludes coverage for settlement or other soil movement, this portion of the claim is rejected.
Additionally, the policy also specifically excludes coverage for any portion of the slab other than that which is directly within the foundation walls of the building. (Policy, Exhibit 1, Article V(D). The most substantial portion of plaintiffs claim igof slab damage included replacement of the driveway, walkway, patio and porch area, which areas are not covered, and since plaintiff presented no evidence concerning any expenses related to the portion of the slab within the building walls, plaintiffs claim for slab damage must be rejected for that reason as well.
Regarding the duplication issue, the Court also finds that American Bankers correctly tendered approximately $12,805 in payment of the building damages, which represented the damages to the building calculated by adjuster Dan Boyd, less the duplication payment form the April flood.
As referenced in the August 1 letter (Exhibit 8), American Bankers questioned a portion of the May 8 claim as being duplicative of a claim form some two weeks earlier, regarding the flood of April 26, 1991. As a result of the April loss, plaintiff received payment of approximately $11,343 to cover repairs of damages to the building sustained in that flood. American Bankers questioned whether the repairs had been initiated in the short period of time between the two floods, and determined that many of the items of damage claimed from the May 8 flood were duplicative of ones claimed but not repaired previously. After recalculating the damages, American Bankers determined that plaintiff was entitled to an additional $12,805 because of the May 8, 1991 flood. Plaintiff, however, claimed that all repairs from the first flood had been completed and therefore the previous amount paid should not be subtracted from the May 8 claim.
As for documentation for repairs done between the two floods, plaintiff produced no bills, invoices or receipts from this time period, and produced only a few unsubstantiated checks, some of which were written before the April loss. Plaintiff provided absolutely no bills, invoices or receipts for repairs allegedly done between the floods, failed to prove that any repairs were done between the two floods, failed to prove that American Bankers’ decision to subtract the previous amount claimed from the May 8 loss was erroneous, and submitted no credible proof that he was entitled to any funds in addition to the almost $33,000 he was | (tendered in connection with the April and May 1991 floods.
Moreover, adjuster Dan Boyd who handled the May flood loss observed that no repairs had taken place. Plaintiff, Mr. Alleman, attempted to substantiate such repairs by testifying that he had cut one and a half feet off of the cedar siding all around the house. But, the photographs taken after the May flood (Exhibit 13) specifically showed that the siding has not been cut, and thus the testimo *299 ny concerning interim repairs was not credible.
As noted, it is the plaintiffs burden to prove the elements of his claim, and he cannot rely upon unsubstantiated allegations and assertions. Mr. Alleman produced numerous bills and invoices for items allegedly for repair of the damaged home after the May flood, yet on cross examination of Ms. Alleman, she admitted that most of these invoices were for supplies for substantial renovation of the home and were not for repair of items damaged in the flood. For example, plaintiff submitted bills for new aluminum siding, new gutters and downspouts which were not present before the flood, a new metal roof, new closets, new french doors, new living room shelving, and the enclosure and renovation of a patio room. Ms. Alleman admitted that these items did not represent items damages by the flood. Since these items represented the majority of the invoices presented, the testimony presented by plaintiff regarding the extent of flood-caused damages was at best inconclusive, and could under no circumstances adequately support a finding in his favor. This failure of proof mandates a judgment for defendant, American Bankers Insurance Company.
Based upon the foregoing facts and law, this Court finds that federal law governs the interpretation of standard NFIA flood insurance policies such as the one in existence between Edgar Alleman, Jr. and American Bankers Insurance Company. As such, plaintiffs claims for detrimental reliance, statutory penalties and attorneys’ fees under Louisiana law must fail. The express provisions of the standard NFIA policy are controlling, and cannot be unilaterally modified. Moreover, the facts of this case do not establish any conduct by American Bankers which could be said to 17approximate arbitrary or capricious conduct, nor did Mr. Alleman justifiably rely on any representations of adjuster Dan Boyd.
The Court also finds that the damage to the slab was caused by soil settlement or other soil movement caused by subsurface water accumulation. Because the policy specifically and clearly excludes coverage for damages caused by land sinkage, land subsidence, or destabilization or movement of land resulting from the accumulation of water in subsurface land areas, and also specifically excludes the replacement of driveway, walkway, patio and porch, the damage is not covered by the policy. Furthermore, because plaintiff has failed to produce any credible evidence or proof of his claim for damage caused by the flood in excess of the amounts paid or tendered by American Bankers, the Court has no alternative but to render judgment in favor of American Bankers Insurance Company, with all costs of these proceedings to be borne by plaintiff.
ACCORDINGLY, JUDGMENT WILL BE RENDERED in favor of American Bankers Insurance Company, and against plaintiff, dismissing his suit with prejudice, with plaintiff to bear all defendant’s costs under La.R.S. 13:4533 and La.C.C.P. Art. 1920, and all other court costs.
Donaldsonville, Louisiana this 12th day of January, 1993.
/s/ Glynn Long
JUDGE